# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 3:04-1044** |
| **v.** | ) | **Judge Trauger / Knowles** |
| | ) | |
| | ) | |
| **LLOYD-EUGENE STOUDER II,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

### I. Introduction and Background

This matter is before the Court upon Defendant's Motion to Dismiss and Plaintiff's

Motion for Summary Judgment. Docket Entry Nos. 7, 13. Along with its Motion, Plaintiff

contemporaneously filed a supporting Memorandum of Law (Docket Entry No. 14) a Statement

of Undisputed Facts (Docket Entry No. 15), the Declaration of William W. Kiessling (Docket

No. 17) and the Declaration of Joseph Patrick (Docket No. 18). Defendant has not responded to

Plaintiff's Motion or Statement of Undisputed Facts.[1]

Plaintiff, the United States, filed this action to obtain a judicial declaration that UCC

Financing Statements filed by Defendant against certain employees of the Internal Revenue

---

[1] On April 21, 2005, Defendant filed a "Response to United States Requests and Memorandum(s)." Docket No. 20. The first sentence of that document states, "This is in response to the United States Interrogatories dated April 8, 2005, Document Requests dated April 8, 2005, and Memorandum dated April 15, 2005." *Id*., p. 1. It is clear that the referenced document is not a response to Plaintiff's Motion for Summary Judgment.

Case 3:04-cv-01044   Document 24   Filed 09/02/05   Page 1 of 14 PageID #: 1

Service ("IRS"), purporting to encumber all real and moveable property of those employees, be declared null, void, and without legal effect, and to permanently enjoin Defendant from all future filings of similar instruments. Docket Entry No. 1. Plaintiff avers that Defendant's filing was without "any legal basis whatsoever," was designed to retaliate against, and harass, the employees for performance of their official duties, and was "specifically calculated to cause substantial interference with the enforcement of the laws of the United States pertaining to the internal revenue, and to molest, interrupt, hinder or impede employees or officers of the United States who are in good faith performing their official duties." *Id.* As noted, Plaintiff seeks declaratory and injunctive relief. *Id.*

Defendant, pro se, filed his Answer on December 27, 2004. Docket Entry No. 4. In his Answer, Defendant states, *inter alia*, that he filed the UCC Financing Statements because of the employees' "failure to respond and trespass on contract." *Id.* Defendant acknowledges, "While I agree with the allegation of harassment, in truth, harassment was initiated by the plaintiff against the defendant." *Id.* Defendant in his Answer, offers,

> I am not an unreasonable man. ... I will promptly file a UCC-3 termination of the 'UCC Financing Statement' in exchange for the following;
>
> > *Signed Affidavits, or the equivalent, from the U.S. Departments of Treasury, D.O.J., State* **AND** *the Internal Revenue service, prepared in a manner suitable for public recordation, observing recognition of Sovereign Citizenship status and permanent exemption from Subtitle A 26 U.S.C. federal income taxes for myself and my three children and grandchild (will also fall under Little Shell Pembina Band), regardless of any contrary evidence that may be presented in the future,* **AND** *a full refund of* **ALL** *funds paid to the U.S. Department of Treasury / Internal Revenue Service, to date, (as recently requested from the U.S. Department of Treasury) ...*

2

> Further, I will pay no legal fees and would request these actions to be completed by February 1, 2005. ... I believe that any rational, reasonable thinking individual would consider this a miraculously equitable alternative to $300,000,000 in lawful civil coin.

Docket Entry No. 4.  (Bold and italics in original.)

On January 19, 2005, Defendant filed the pending "Mandatory Judicial Notice and Motion to Dismiss."  Docket Entry No. 7.  Defendant included a "Brief in Support of Motion to Dismiss" in his submission.  *Id.*  As a preliminary matter, Defendant notes, *inter alia*, that he has "specifically severed, forfeited, waived, rejected, declined, and refused to voluntarily accept any and all benefits for the 'United States', a/k/a the corporate Democracy of the District of Columbia and it's [*sic*] instrumentalities, including the corporate State of Tennessee."  *Id.*  Defendant further gives "NOTICE of purported Defendant's status as a non-juristic.  Free and lawful man who is a Sovereign Citizen/National, and who is not a 14th Amendment individual/citizen of the United States..."  *Id.*  (Capitalization in original.)

With regard to his "Motion to Dismiss," Defendant argues that this Court lacks both subject matter and in personam jurisdiction, and that the Complaint fails to state a claim against upon which relief can be granted.  Docket Entry No. 7.  Defendant also "moves the court for a summary judgment in favor of the purported Defendant.  IF the purported Plaintiff has a cause for action, the source of the matter is based in a Constitutional tax issue, for which jurisdiction resides within the International Court of Trade."  *Id.*  (Capitalization in original.)

On February 4, 2005, Plaintiff filed its Opposition to Defendant's Motion to Dismiss.  Docket Entry No. 11.  In its Opposition, Plaintiff argues that Defendant's arguments "are so frivolous that they do not merit serious consideration or treatment, and have universally been

3

rejected." *Id.* Plaintiff maintains that because Defendant "admits the extortionary nature of the UCC Financing Statement," his filing is "ludicrous and a patent abuse of the creditor's system in an attempt to hinder the United States' efforts to collect on tax debts." *Id.* Accordingly, Plaintiff argues that Defendant's Motion should be denied. *Id.*

Defendant filed a "Response to United States [*sic*] Opposition to Dismiss" on February 17, 2005, which the Court will construe as a Reply. Docket Entry No. 12. Defendant, in his "Reply," "re-states everything enclosed within the original Motion to Dismiss." *Id.*

Plaintiff filed the pending Motion for Summary Judgment (Docket Entry No. 13), accompanying Memorandum of Law (Docket Entry No. 14), and Statement of Undisputed Facts (Docket Entry No. 15) on March 3, 2005. Plaintiff contends that it is entitled to summary judgment because, *inter alia*, (1) Defendant filed fraudulent UCC Financing Statements against IRS employees claiming that the IRS employees owed him $300 million under a "contractual obligation," when the only contact the IRS employees had with Defendant occurred in connection with the performance of their official duties of attempting to collect Defendant's unpaid tax debts; and (2) Defendant "acknowledges that the UCC filings are retaliatory in nature and are being used for extortionary purposes." *Id.* As has been discussed, Plaintiff seeks a declaration that the UCC Financing Statements filed by Defendant are null and void, and also seeks to enjoin Defendant from future filings of similar instruments. *Id.*

Defendant has not filed a Response to Plaintiff's Motion for Summary Judgment or Statement of Undisputed Facts.

It should also be noted that, on April 8, 2005, the undersigned entered an Order stating in

4

pertinent part as follows:

> It is difficult to discern from the Complaint whether the United
> States is attempting to assert its own rights or whether it is
> attempting to assert the rights of its employee, Mr. Kiessling. If
> the United States is attempting to assert its own rights, it is unclear
> what those rights are and how Defendant has violated any rights
> possessed by the United States. If the United States is attempting
> to assert Mr. Kiessling's rights, it is unclear whether the United
> States has standing to do so.
>
> Therefore, the United States shall file a Brief addressing these
> issues on or before May 9, 2005.

Docket No. 16, p. 3.

On April 18, 2005, Plaintiff submitted a "Supplemental Memorandum" addressing these

issues. Docket No. 19. In that Memorandum, Plaintiff cited a federal statute giving the district

courts of the United States jurisdiction "to render such judgments and decrees as may be

necessary or appropriate for the enforcement of the Internal Revenue laws." 26 U.S.C. § 7402.

Plaintiff also cited several cases for the proposition that the United States has standing in cases

such as this one. Although Plaintiff later filed a document headed "Response to United States

Requests and Memorandum(s)" (Docket No. 20), he did not discuss the standing issue. Based

upon the Supplemental Memorandum filed by the United States, the undersigned concludes that

Plaintiff does have standing to bring this action.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for

Summary Judgment be GRANTED, and that Defendant's Motion to Dismiss be DENIED.

Case 3:04-cv-01044   Document 24   Filed 09/02/05   Page 5 of 14 PageID #: 5

## II.  Undisputed Facts[2]

The defendant Lloyd-Eugene Stouder II is an individual who believes he is not liable to pay Federal income taxes and makes various constitutional challenges to the United States' ability to collect on the outstanding Federal income tax liabilities that he owes.  Among other things, Stouder asserts that he has renounced his citizenship and, thus, is not required to pay Federal income tax.  Docket Nos. 4&7 at 2, 6-7, Exs. 1 & 2.

On or about October 5, 2004, Stouder filed UCC Financing Statements against William W. Kiessling and Joseph Patrick.  The defendant filed the UCC Financing Statements because Kiessling and Patrick were allegedly "in default of trespass on contract, trespass on claim and copyright for the sum-certain of $300,000,000.00 LAWFUL SILVER COIN MINTED BY THE TREASURY OF THE [U]nited [S]tates of America per private, firm, permanent and binding contract."  Kiessling Decl. At ¶ 4, Ex. 1; Patrick Decl. At ¶ 4, Ex. 1.

The UCC Financing Statements which are the subject of this civil action were filed by Stouder in retaliation for acts performed by Kiessling and Patrick as part of their official duties. In the answer to the United States' complaint, Stouder offers to remove the $300 million financing statement if the Department of Treasury and the IRS submit affidavits "prepared in a manner suitable for public recordation, observing recognition of Sovereign Citizenship status and permanent exemption from Subtitle A 26 U.S.C. federal income taxes for myself and my three children and grandchild."  Docket No. 4 at 10.

---

[2]  The following facts are set forth in Plaintiff's "Statement of Undisputed Facts" (Docket No. 15), to which Defendant failed to respond.  Thus, they are undisputed.  *See* Local Rule 8(b)(7)(C) and (g).

6

The UCC Financing Statements, which purport to encumber the property of Kiessling and Patrick, are specifically calculated to cause substantial interference with the enforcement of the laws of the United States pertaining to the Internal Revenue Code by harassing and hindering employers or officers of the United States in the good faith performance of their official duties. Stouder concedes that the UCC Financing Statements were for harassment purposes: "Counsel for the plaintiff continues with speculation by stating, *The act by the defendant . . . solely designed to __harass__ a Federal Officer'*. While I agree with the allegation of harassment . . ." Docket No. 4 at 8; *see also* Docket No. 7 at 10.

At all times relevant to this action, Kiessling was employed as an associate area counsel with the Internal Revenue Service ("IRS"), Office of Chief Counsel who supervises and manages a group of attorneys and staff who are employed in the IRS Associate Area Counsel, Small Business/Self-Employment office in Nashville, Tennessee. Kiessling Decl. at ¶¶1, 2.

At all times relevant to this action, Joseph Patrick was employed as a revenue officer with the IRS currently assigned to the Nashville, Tennessee office. As an IRS revenue officer, he identifies collection sources from taxpayers who have outstanding Federal tax liabilities to the United States and takes any appropriate actions to collect on those tax liabilities. Patrick Decl. at ¶¶1, 2.

Kiessling and Patrick are not personally acquainted with the defendant and have not personally had any contact or relationship with him other than in their official capacities with the IRS. They have no knowledge of any event that would have occurred between defendant and them that would give rise to a contractual obligation, debt or claim. Kiessling Decl. at ¶3; Patrick Decl. at ¶3.

7

Defendant learned of Kiessling's identity because the IRS issued a "Last Chance Letter" to the defendant due to his failure to produce the documents and records requested by the administrative summons. This letter is to allow the taxpayer a last chance to provide the requested information without further action being taken by the IRS. In his capacity as associate area counsel, Kiessling would have signed this "Last Chance Letter" sent to Stouder. Kiessling Decl. at ¶6.

Defendant learned of Patrick's identity through his activities to collect from Stouder the outstanding Federal tax liabilities that he owes to the United States. Patrick has met Stouder in person on three occasions, and has communicated with him by telephone and written correspondence on various occasions. All of these contacts described above occurred as a result of Patrick carrying out his duties in his official capacity as a revenue officer with the IRS. Patrick Decl. at ¶6.

The recording of this document is a perplexing nuisance to Kiessling. He is concerned that it will interfere with his ability to enjoy and convey his property and may permanently damage his credit rating, not only in Tennessee, but throughout the United States. Kiessling Decl. at ¶5.

The recording of this document has caused Patrick to experience distress and anxiety. For example, he is concerned that it will interfere with his ability to enjoy and convey his property and may permanently damage his credit rating, not only in Tennessee, but throughout the United States. Patrick Decl. at ¶5.

8

## III.  Analysis

### A.  Local Rules 8(b)(3) and 8(b)(7)(c) and (g)

Local Rule 8(b)(3) states, in pertinent part:

> Each party opposing a motion shall serve and file a response,
> memorandum, affidavits, and other responsive material not later
> than ten (10) days after service of the motion, except, that in cases
> of a motion for summary judgment, that time shall be twenty (20)
> days after the service of the motion, unless otherwise ordered by
> the Court.  Failure to file a timely response shall indicate that there
> is no opposition to the motion.

Plaintiff filed the pending Motion for Summary Judgment on March 3, 2005.  Docket

Entry No. 13.  As has been noted, Defendant has failed to respond to Plaintiff's Motion.

Pursuant to Local Rule 8(b)(3), Plaintiff's Motion is, therefore, unopposed.

Additionally, with respect to Motions for Summary Judgment specifically, Local Rules

8(b)(7)(c) and (g) state, in pertinent part:

> c.  Any party opposing the motion for summary judgment must
> respond to each fact set forth by the movant ...
>
> . . .
>
> g.  Failure to respond to a moving party's statement of material
> facts, or a non-moving party's statement of additional facts, within
> the time periods provided by these Rules shall indicate that the
> asserted facts are not disputed for the purposes of summary
> judgment.

As has been noted, Defendant has likewise failed to respond to Plaintiff's Statement of

Undisputed Facts.  Pursuant to Local Rule 8(b)(7)(g), Defendant's failure to respond indicates

"that the asserted facts are not disputed for the purposes of summary judgment."  Accordingly,

there are no genuine issues as to any material fact and, as will be discussed in greater detail

below, all that remains to be determined is whether Plaintiff is entitled to a judgment as a matter

9

of law.

## B.  Summary Judgment Standards

It would be inappropriate to grant Plaintiff's Motion solely on the ground that Defendant

has failed to respond.  *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir.

1998).  As the Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor
> of the movant simply because the adverse party has not responded.
> The Court is required, at a minimum, to examine the movant's
> Motion for Summary Judgment to ensure that he has discharged
> [his initial] burden ...  The federal rules require that the party filing
> a Motion for Summary Judgment "always bears the burden of
> demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted).  The Court will, therefore, consider whether Plaintiff has met its burdens

under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law."  A dispute is "genuine" only if "the evidence is such

that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the

burden of proving the absence of a genuine issue as to material fact concerning an essential

element of the opposing party's claim.  *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548,

2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir.

10

1989).  In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party.  *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial.  If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273.  When this occurs, the moving party is entitled to summary judgment as a matter of law.  *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

## C.  The Case at Bar

### 1.  Plaintiff's Motion for Summary Judgment

Federal district courts have authority under 26 U.S.C. § 7402(a) to issue writs and injunctions, as well as other orders and judgments "as may be necessary or appropriate for the enforcement of the internal revenue laws."  *See United States v. Ernest &Whinney*, 735 F.2d 1296, 1301 (11th Cir. 1984); *Body v. United States*, 243 F.2d 378, 384 (1st Cir. 1957).

The referenced statute empowers this Court to grant the relief the United States seeks here.  It is well-established that courts may "void common-law liens imposed by taxpayers on the property of government officials assigned to collect delinquent taxes."  *Evan v. Bilby,* 764

11

F.2d 1325, 1327 (9th Cir. 1985); *United States v. Andra*, 923 F.Supp. 157, 159-60 (D. Idaho 1996); *United States v. Thomas*, 819 F.Supp. 927 (D. Colo. 1993); *United States v. Van Dyke,* 568 F.Supp. 820 (D. Ore. 1983). The Court sees no distinction between voiding such a common-law lien and voiding a UCC Financing Statement intended to encumber government officials' property for harassment purposes.

The undisputed facts show that Defendant had no legal or factual basis for filing the referenced UCC Financing Statements against Mr. Kiessling and Mr. Patrick, and that he did so for "harassment." Courts have found that these types of security filings are unenforceable when done for the purposes of harassment and hindrance. *United States v. MacElvain*, 858 F.Supp. 1096, 1100 (M.D. Ala. 1994), *aff'd*, 68 F.3d 1186 (11th Cir. 1995); *Andra*, 923 F.Supp. at 160; *Thomas*, 819 F.Supp. at 928; *Vandyke*, 568 F.Supp. at 821-22.

For the foregoing reasons, the Motion for Summary Judgment should be GRANTED to the extent that it seeks a declaration that the UCC Financing Statements at issue are null, void, and without effect.

The United States also seeks an injunction to prevent Defendant from filing similar UCC Financing Statements. Whether an injunction should be issued involves consideration of four familiar elements:

> (1) the threat of irreparable harm to the movant; (2) the state of balance between harm to the movant and the injury that granting the injunction will have on the Defendant; (3) the probability that the movant will succeed on the merits; and (4) the public interest. *Frish's Restaurant v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985).

The Court has considered these elements, and concludes that Plaintiff has satisfied these

12

four elements and is entitled to the issuance of an injunction, as argued by Plaintiff.

### 2.  Defendant's Motion to Dismiss

As discussed above, Defendant has filed a "Mandatory Judicial Notice and Motion to Dismiss."  Docket No. 7.  Plaintiff has filed an Opposition to the Motion.  Docket No. 11.  Defendant's Motion to Dismiss is based upon this Court's lack of subject matter jurisdiction, lack of in personam jurisdiction, and failure to state a claim upon which relief can be granted.  Apparently, as an afterthought, Defendant also requests summary judgment pursuant to Fed. R. Civ. P. 56(b), although he does not explain exactly how or why he is entitled to summary judgment.  Moreover, Defendant has filed no affidavits or other supporting materials in a form required by Fed. R. Civ. P. 56.[3]

As Plaintiff has stated in his Opposition, Defendant's Motion to Dismiss contains "incoherent gobbledygook."  Docket No. 11, p. 1.

It appears to the undersigned that Defendant's main argument in the Motion to Dismiss is that he is not a "person" subject to income tax under the Internal Revenue Code, apparently because he has renounced his citizenship.  This proposition is simply incorrect.  *See United States v. Sloan*, 939 F.2d 499, 501 (7th Cir. 1991); *Lonsdale v. United States*, 919 F.2d 1440, 1448 (10th Cir. 1990).  Furthermore, Plaintiff has not made any showing whatsoever that this Court lacks subject matter jurisdiction, in personam jurisdiction, or that Plaintiff has failed to

---

[3]  The Court notes that the "Mandatory Judicial Notice and Motion to Dismiss" (Docket No. 7) contains a "Verification."  The matters verified in the Motion, however, are legal arguments, not factual propositions.  Additionally, while Defendant has submitted a copy of a letter from Defendant apparently to William W. Kiessling dated December 18, 2004, which contains a "Statement of Facts," that letter is not verified.

13

state a claim upon which relief can be granted.

Therefore, Defendant's Motion to Dismiss (Docket No. 7) should be DENIED.


## IV. Recommendation

For the reasons discussed above, undersigned recommends that Plaintiffs' Motion for Summary Judgment be GRANTED and Defendant's Motion to Dismiss be DENIED. Specifically, the Court should enter a declaratory judgment declaring the UCC Financing Statements filed against William Kiessling and Joseph Patrick to be null, void, and without effect, and enter an injunction enjoining Defendant from engaging in future similar conduct.

Within ten (10) days of the entry of this Order, the United States shall submit a proposed Order and Injunction granting the relief set forth above for the consideration of Judge Trauger.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has ten (10) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court.  Any party opposing said objections shall have ten (10) days from receipt of any objections filed in which to file any responses to said objections.  Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied,* 474 U.S. 1111 (1986).

_____

E. CLIFTON KNOWLES
United States Magistrate Judge